# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER MATTEI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 13-12195-FDS |
| ) | |
| BENJAMIN A. DUNBAR, MASSCORR ) | |
| Supervising Instructor; MICHAEL ) | |
| WALKER, MASSCORR Supervising ) | |
| Instructor; BRETT GREEN, MASSCORR ) | |
| Supervising Instructor; GARY RODEN, ) | |
| MASSCORR Supervising Instructor; and ) | |
| Lt. STEPHEN GATEWOOD, I.P.S. Unit ) | |
| Commander, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON
## MOTION TO DISMISS

**SAYLOR, J.**

This action arises out of alleged retaliation by a prison employee against an inmate at the Massachusetts Correctional Institution at Norfolk ("MCI-Norfolk"). The complaint alleges that defendant Benjamin Dunbar, a supervisor in one of the industrial shops, refused to promote plaintiff Alexander Mattei, denied him good-time credit, terminated him from his position in the industrial shop, and recruited another inmate to harm him in retaliation for grievances that Mattei had filed about Dunbar. It further alleges that other prison employees—defendants Michael Walker, Brett Green, Gary Roden, and Stephen Gatewood—failed to investigate or prevent the retaliatory acts.

Defendants have moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied

in part.

I.  **Background**

Unless otherwise noted, the facts are presented as stated in the complaint.

In October 2011, Alexander Mattei, an inmate at MCI-Norfolk, began work as a janitor in the Metal 1 industrial shop. Initially, he was assigned to work under the supervision of Benjamin Dunbar, a supervising instructor. When another inmate left his position as the operator of a plasma cutter machine, Mattei asked Dunbar if he could be trained to fill that position. Dunbar refused and allegedly threatened Mattei with a disciplinary report for rejecting his job assignment.

The following day, Dunbar transferred Mattei to Metal 2, where he worked under a new supervisor. While working in Metal 2, Mattei received training in welding, metal fabrication, and grinding, although his pay remained at the rate of pay for a janitor.

In April 2012, Mattei was transferred back to Metal 1, and again placed under Dunbar's supervision. Two weeks later, an inmate left the shop, vacating a position. Mattei requested transfer to the position, which would include a raise in wages. Allegedly, Dunbar refused the request and instead hired an inmate with less seniority and "questionable training." (Compl. ¶ 19).

Mattei submitted an informal grievance against Dunbar, alleging a discriminatory hiring practice in selecting inmates for positions and "pay slots." The institutional grievance coordinator allegedly provided a copy of the informal grievance to Michael Walker, another supervising instructor at MCI, who in turn provided it to an officer of the Inner Perimeter

Security Unit ("IPS"), who then showed the grievance to Dunbar.[1] After seeing the grievance, Dunbar allegedly called Mattei into his office and stated that he had not hired Mattei for the open position because he lacked experience and capability. Brett Green, another supervisor, was allegedly present for that conversation. Mattei was then assigned to work as an assistant to another inmate.

In May 2012, Mattei was transferred back to Metal 2. In September, he approached the supervising instructor and requested a permanent transfer to Metal 2. He then approached Dunbar with the same request. Both Dunbar and the supervising instructor of Metal 2 allegedly agreed to the transfer.

At the end of September 2012, Mattei received a "Deduction from Sentence Report" that documented his earned good time from July 2011 to July 2012. The report showed that he had not been granted earned good time in April 2012, the month that he had filed the informal grievance against Dunbar. He approached Dunbar about the matter but, according to the complaint, Dunbar reacted dismissively. Mattei then approached Walker, who allegedly responded that he would investigate the matter. Walker did not inform Mattei of the results of any investigation. Mattei also asked Gary Roden, Superintendent of MCI-Norfolk, about the reason for the lack of earned good time in April 2012.

The supervisor of Metal 2 told Mattei to "let the issue go." (Compl. ¶ 37). However, Mattei told him that he would file a formal grievance. He also asked the supervisor about a position with higher pay that would soon be available, and the supervisor told him that he was not eligible because he had not been permanently transferred to Metal 2. According to the

---

[1] According to the complaint, Lieutenant Stephen Gatewood was the commander of the IPS. Defendants assert, however, that he was the Institutional Grievance Coordinator at MCI-Norfolk. (Def. Mem. at 1). According to Mattei, two employees at MCI-Norfolk have the name Stephen Gatewood; one is the IPS commander, and the other is the grievance coordinator. (Pl. Opp. at 1).

complaint, Dunbar then approved the transfer to Metal 2 a second time, but the Metal 2 supervisor told him that the transfer would not occur and that he had been reassigned back to Metal 1.

On October 9, 2012, Mattei was told that he was to report to Metal 1 beginning the following Monday. Around the same time, Roden informed him that he had not received earned good time due to a report of unsatisfactory performance. On October 10, 2012, Mattei filed a formal grievance, alleging that Dunbar had withheld earned good time because Mattei had filed an informal grievance. (Compl., Ex. A at 1).

On October 15, 2012, Mattei was told not to go into work in the morning, and reported for the afternoon shift instead. Dunbar informed him that he was to be assigned to the Metal 1 paint crew. The following day, Mattei overheard Dunbar tell Green that Mattei had filed a grievance against Dunbar.

On October 17, 2012, Dunbar noticed that Mattei was wearing a back brace that another prisoner had given him. Dunbar told him that it was a tool and needed to be inventoried, and that he had to put it away. Mattei put the brace away on a shelf. Later the same day, Dunbar gave Mattei the brace and told him to report to the Metal 2 supervisor, who asked how Mattei had obtained the brace and then sent him back to Metal 1.

On the afternoon of October 18, 2012, the supervisor of the chemical shop told Mattei that Dunbar had terminated him. Mattei later asked Dunbar why he had terminated him. According to the complaint, Dunbar did not provide an explanation and suggested that Mattei speak with him on Monday unless Mattei spoke to IPS first.

On November 1, 2012, Mattei filed another grievance, alleging that Dunbar had retaliated against him for filing a formal grievance. (*See* Compl., Ex. A at 16). That same day, he

4

requested a copy of the incident report that would include the reason he had been terminated. On November 6, 2012, he received notice that his request had been forwarded to Roden for response. He contends that he never received an answer or the requested report.

On December 9, 2012, having received no notice as to the grievances, Mattei filed an appeal of his grievance for denial of good time. (Compl., Ex. B at 11). On January 10, 2013, the institutional grievance coordinator denied the good-time grievance as unsubstantiated because Dunbar "denie[d] the claim" and "there [we]re no other witnesses to confirm [the] claim." (Compl., Ex. A at 10). The decision explained that he had not been rewarded good time because he had "received an unsatisfactory for work completed" during that month. (*Id.*). Also on January 10, the institutional grievance coordinator denied the termination grievance as unsubstantiated because Dunbar "denie[d] the claim" and "there [we]re no other witnesses to confirm [the] claim." (Compl., Ex. B at 9). The decision explained that the termination "appears to be appropriate due to the fact that [Mattei] admitted to taking a tool (back brace) from a shop." (*Id.*).

On January 23, 2013, Mattei appealed the denial of the two grievances. (*See* Compl., Ex. A at 12). On February 8, 2013, Roden denied the appeal of the good-time grievance as unsubstantiated. (Compl., Ex. A at 14 ). Mattei contends that he never received a response from his appeal of the termination grievance.

On June 9, 2013, Mattei learned that Dunbar had allegedly asked another inmate, Jeffrey White, to assault him. (Compl., White Aff. ¶¶ 10-11, 14-15). Dunbar allegedly made that request in September or October of 2012. (White Aff. ¶¶ 4-5). Mattei filed a grievance based on that information. The grievance was denied on June 20, 2013, on the ground that the claim was not sustained by the IPS investigation. (Compl., Ex. B at 15). Mattei appealed, and Roden

5

denied that appeal on July 8, 2013. (Compl., Ex. B at 17).

On September 9, 2013, plaintiff filed suit in this court against Dunbar, Walker, Roden, Green, and Gatewood, in their individual and official capacities. On June 13, 2014, defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

**III.    Analysis**

The complaint alleges that defendant Dunbar violated plaintiff's rights under the First Amendment by retaliating against him and threatening him, and that the remaining defendants violated those rights by assisting in the alleged retaliation, failing to prevent it, and failing to investigate it.  Although none of the thirteen counts in the complaint specifically refers to a specific constitutional or statutory provision or otherwise clearly presents a theory of relief, the introduction to the complaint states that plaintiff seeks relief under 42 U.S.C. §§ 1983 and 1986.

As an initial matter, defendants contend that the complaint must be dismissed because it fails to provide sufficient detail about the factual and legal bases of the claims as required by Fed. R. Civ. P. 8(a).  In particular, they take issue with Counts 5, 6, 7, 9, 10, 11, and 13, because those counts do not specify which "violations" defendants failed to investigate or prevent.  However, earlier sections of the complaint set forth in relatively concise numbered paragraphs the allegations underlying plaintiff's claims, and in particular the violations to which the claims refer.  Therefore, read in the context of the complaint as a whole, Counts 5, 6, 7, 9, 10, 11, and 13 are not insufficiently pleaded as a matter of law.[2]

### A.    Dunbar Retaliation Claims:  Counts 1, 2, 3, 8, and 12

Count 1 alleges that Dunbar threatened that he would fire Mattei in retaliation for Mattei's seeking a promotion; Count 2 alleges that he refused to promote Mattei; Count 3 alleges that he retaliated against Mattei for filing a grievance by denying him good-time credit; and Count 8 alleges that he retaliated against Mattei by firing him for filing a grievance.  Count 12 alleges that Dunbar asked another inmate to harm Mattei "for the purpose of preventing [him] from further

---

[2] The complaint was somewhat vague and unclear, as is often the case with pleadings drafted by non-lawyers.  Although the Court has carefully read the complaint and construed it liberally, the "duty to be 'less stringent' with pro se complaints does not require [a court] to conjure up [unpleaded] allegations."  *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

filing grievances against Dunbar." Although that allegation refers to future grievances, the word "further" implies that Dunbar's actions were motivated by the past grievances filed by Mattei. It, therefore, can fairly be construed as alleging a separate act of retaliation based on past grievances.[3]

To make out a *prima facie* claim for retaliation based on constitutionally protected conduct, a party must allege that "1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him, 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action 'but for' the prison officials' retaliatory motive." *Schofield v. Clarke*, 769 F. Supp. 2d 42, 47 (D. Mass. 2011) (citing *Partelow v. Massachusetts*, 442 F. Supp. 2d 41, 51 (D. Mass. 2006)); *see McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979).

A prisoner does not have a constitutional right to obtain or maintain work. *See DuPont v. Saunders*, 800 F.2d 8, 10 (1st Cir. 1986). For this reason, asking for a promotion is not a constitutionally protected activity. Counts 1 and 2, which appear to allege retaliation in response to Mattei's requests for a promotion, therefore fail to state a claim. Accordingly, they will be dismissed.[4]

On the other hand, filing a grievance is a protected activity. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Schofield*, 769 F. Supp. 2d at 47. Because Counts 3, 8, and 12 allege retaliation in response to grievances filed by Mattei, those counts do refer to protected activity.

---

[3] To the extent Count 12 could be read to allege an Eighth Amendment violation based on a threat of future harm, the Court finds that such a claim would not be cognizable. *See Hudson v. McMillan*, 503 U.S. 1, 10 (1992) (noting that a prisoner has no Eighth Amendment claim for excessive force if he has not suffered physical injuries beyond the *de minimis* level); *Shabazz v. Cole*, 69 F. Supp. 2d 177, 201 (D. Mass. 1999) (verbal threats do not necessarily violate an inmate's Eighth Amendment rights).

[4] Defendants contend that it is unclear whether Counts 1 and 2 are based on a theory of retaliation or a theory of loss of employment. Because prisoners have no constitutional right to work, the distinction is immaterial; the counts fail to state a claim on either theory. *See DuPont*, 800 F. 2d at 10.

Although a prisoner has no right to good-time credit or employment while incarcerated, the denial of those benefits as an act of retaliation may qualify as an "adverse action" in the context of a retaliation claim. *See McDonald*, 610 F.2d at 18; *Ferranti v. Moran*, 618 F.2d 888, 892 n.4 (1st Cir.1980) ("[A]ctions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms."). More generally, any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001). The recruiting of one inmate to harm another clearly fits within this standard, and thus constitutes "adverse action" against the alleged victim.[5]

As for the question of intent, evidence of an individual's state of mind is often unavailable at the time a complaint is filed. *See McDonald*, 610 F.2d at 18. Therefore, to survive a motion to dismiss, a *pro se* complaint need only provide some plausible support for an inference of retaliation. *See id.*; *Schofield*, 769 F. Supp. 2d at 47. Here, the complaint alleges that Dunbar knew about each of the grievances before he undertook the allegedly retaliatory acts and that he acted soon after learning of the grievances.[6] It also alleges that April 2012 was the only month that Mattei's work was deemed unsatisfactory, and that he had been wearing the back brace for several days but was asked to remove it (and then fired because of it) only after he had filed grievances. At this stage, a sufficient inference of relatedness can be drawn to permit the claim to

---

[5] Defendants contend that Dunbar's alleged statements to White cannot constitute adverse action, because they were not made to Mattei and because Mattei has alleged no facts that would "demonstrate [they were] meant to be communicated to the plaintiff." (Def. Mem. at 18) ("A supposed statement uttered to somebody else not intended to be communicated to plaintiff would hardly be a means to keep plaintiff from filing grievances."). According to the complaint, however, Dunbar expressly recruited White to harm Mattei as a means of preventing him from filing future grievances. (Compl. ¶ 99). It is thus fair to say that, taking the allegation as true, Dunbar intended to "communicate" a retaliatory message to Mattei.

[6] The affidavit of Jeffrey White, the prisoner whom Dunbar allegedly recruited to harm Mattei, indicates that Dunbar made that request in "September or October of 2012." (White Aff. ¶¶ 4-5).

9

proceed.

The complaint likewise provides sufficient allegations with respect to "but for" causation. Defendants have asserted alternative explanations for the denial of Mattei's good-time credit and for his termination—specifically, that his work was unsatisfactory and that he took the back brace from the industrial shop. Those explanations may, in the end, be sufficient. The Court recognizes the difficulty of operating a prison and the substantial discretion it owes to the judgment of those who do so. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979); *Hannon*, 645 F.3d at 48 ("We appreciate that running a prison system is a difficult enterprise, fraught with security concerns. Given that reality, courts must defer broadly to correctional officials' managerial decisions."); *Gomes v. Fair*, 738 F.2d 517, 525 (1st Cir. 1984) (counseling that "a court may not substitute its own judgment for the evaluations of officials"). However, at this stage, the question is only whether the allegations are sufficient to state a claim upon which relief can be granted. For present purposes, requiring additional support for Mattei's claims than what he has already provided would impose "a standard more stringent than called for in a pro se action." *See McDonald*, 610 F.2d at 18; *see also Scarpa v. Ponte*, 638 F. Supp. 1019, 1029 (D. Mass. 1986) (denying summary judgment because it was a question of fact whether motivation for prison disciplinary board's punishment of inmate was impermissible or legitimate). Accordingly, the motion to dismiss Counts 3 and 8 will be denied.

In contrast to the denial of good-time credits and the termination, defendants have provided no alternate explanation for the alleged recruitment of White to harm Mattei. The issue of causation thus rises and falls with that of intent. In other words, if Dunbar indeed recruited White to harm Mattei with the intent to retaliate against him for filing grievances, then his retaliatory intent was necessarily a "but for" cause of the adverse action. Because Mattei has

"aver[red] a chronology of events which may be read as providing some support for an inference of retaliation," the claim is sufficient at this stage. *See McDonald*, 610 F.2d at 18. Accordingly, the motion to dismiss Count 12 will also be denied.

### B. Claims Relating to Other Defendants: Counts 4, 5, 6, 7, 9, 10, 11, and 13

The remaining counts allege that the other defendants failed to prevent Dunbar from retaliating against Mattei and failed to properly investigate his claims of retaliation by Dunbar. Reading the *pro se* complaint liberally, and in light of Mattei's arguments in his opposition, it appears that he asserts those claims under 42 U.S.C. § 1986.

Section 1986 creates a cause of action against a person who knew of any of the wrongful acts described in Section 1985, had the power to prevent them, and failed to do so. 42 U.S.C. § 1986. Section 1985 prohibits conspiracy to interfere with civil rights by (1) preventing an officer from performing his or her duties, (2) obstructing justice by intimidating a party, witness, or juror, or (3) depriving a person of his or her legal rights or privileges. 42 U.S.C. § 1985. The complaint here does not allege a violation of § 1985, nor do the facts suggest that the existence of a conspiracy, "a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws," or an overt act in furtherance of that conspiracy. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Because there is no claimed violation of § 1985, there can be no violation of § 1986. Accordingly, the motion to dismiss the claims under § 1986 will be granted.[7]

Even assuming that plaintiff sought to assert those claims under 42 U.S.C. § 1983, they

---

[7] Defendants also contend that the § 1986 claims in Counts 5 and 6 must be dismissed as time-barred under the one-year statute of limitations period. *See* 42 U.S.C. § 1986 (providing that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued"). Because the counts fail to state a claim, the Court need not address whether they would also fail on that basis. *See Pledger v. United States*, 141 F.3d 1150 (1st Cir. 1998).

would still fail.  To bring a valid claim under § 1983, a plaintiff must allege that some "person" acting under color of state law deprived him or her of "rights, privileges or immunities secured by the constitution."  42 U.S.C. § 1983.  There is no vicarious liability under § 1983.  Supervisors may be liable only "when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation."  *Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir. 1987) (*quoting Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

As for the failure-to-investigate claims, the Constitution does not create a liberty interest in, or other right to, access to a prison grievance procedure.  *See Leavitt v. Allen*, 1995 WL 44530, at *2 (1st Cir. 1995) (unpublished) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").  In any event, the complaint indicates that defendants did take steps to investigate Mattei's grievances but concluded that they were unfounded.  (*See* Compl. ¶¶ 22-24 (IPS investigation); Compl., Ex. A at 10 (denying grievance based on facts not set forth in inmate's narrative of grievance)).  Although Mattei may be unhappy with those results, that alone is not sufficient to state a claim for relief.

The allegation that Roden and Gatewood failed to prevent Dunbar and inmate White from causing harm to Mattei could represent a cognizable claim under the Eighth Amendment.  However, the complaint does not allege that Gatewood at any point learned of the allegation or grievance, and accordingly, the claim against him must be dismissed.  Furthermore, even accepting as true that Dunbar did seek to cause harm to Mattei, it does not appear that Mattei was, at any point, at "substantial risk of serious harm."  *See Farmer v. Brennan*, 511 U.S. 825, 834

(1994). Nor does the complaint allege, or reasonably lead to the inference, that Roden (or Gatewood, for that matter) acted with deliberate indifference. *See id.*

In sum, the motion to dismiss will be granted as to Counts 4, 5, 6, 7, 9, 10, 11, and 13.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is DENIED as to Counts 3, 8, and 12, and it is GRANTED as to the remaining counts.

**So Ordered.**

Dated: March 4, 2015

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge