UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALEXANDER MATTEI, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-12195-FDS |
| BENJAMIN DUNBAR, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**SAYLOR, J.**

This action arises out of alleged retaliation by a prison employee against an inmate at the Massachusetts Correctional Institution at Norfolk ("MCI-Norfolk"). Plaintiff Alexander Mattei, an inmate, worked in the prison metal shop, where he was supervised by defendant Benjamin Dunbar. After Mattei was passed over for a promotion, he filed a series of grievances against Dunbar. He was subsequently terminated from the metal shop. Months later, another inmate came forward alleging that Dunbar had asked him what he would want in return for "taking care" of Mattei.

Mattei, who is proceeding *pro se*, contends that Dunbar retaliated against him for filing grievances in violation of the First Amendment. Specifically, he alleges that Dunbar denied him good-time credit, terminated him from his position in the industrial shop, and attempted to recruit another inmate to cause him physical harm, all in retaliation for filing grievances.

Dunbar has moved for summary judgment as to all claims. For the reasons set forth below, the motion will be granted in part and denied in part.

I.   **Background**

    A.   **Factual Background**

The following facts are either undisputed or taken in the light most favorable to Mattei as the non-moving party.

Alexander Mattei has been an inmate at MCI-Norfolk since August 2009. (Def. SMF ¶ 1). MCI-Norfolk has a metal shop that employs inmates. (Def. SMF. ¶ 4). It is divided into two units: Metal Shop I and Metal Shop II. (Def. SMF ¶ 5). Inmates are assigned to work in only one shop, but they can work in the other shop if there is a need and a supervisor reassigns them. (Def. SMF. ¶ 19).

Defendant Dunbar is the Shop Manager of Metal Shop I and is in charge of supervising and training the inmates who work there. (Def. SMF (*Id.* ¶ 4). Mattei began working in Metal Shop I in October 2010. (Def. SMF ¶ 44).

Mattei contends that he submitted the first of four grievances against Dunbar on April 19, 2012. (Mattei Dep. at 60–61). His first grievance alleged that despite being the most senior person in the metal shop eligible for a pay raise, he was unfairly passed over when the raise when to another inmate. (Mattei Dep. at 62). He stated that it was the second time his seniority had been ignored and he was passed over for a promotion. (*Id.*). Although MCI-Norfolk has a procedure for keeping track of inmate grievances, the prison has no record of the first grievance. (Def. SMF ¶¶ 98–100). Mattei, however, has produced a handwritten copy of his grievance. (Mattei Dep. at 61).

Dunbar denies having any knowledge of the grievance. (Def. SMF ¶ 102). Mattei contends that Dunbar was aware of the grievance, and that he said he would "do something" for him so that he would be eligible for the next promotion. (Mattei Dep. at 69). Mattei further

contends that Dunbar then assigned him to work with another inmate so that he could receive additional training and thus become eligible for a raise. (Mattei Dep. at 71–72). Mattei worked with that other inmate for approximately two weeks before he was transferred to Metal Shop II, where he worked from mid-May 2012 until October 2012. (Mattei Dep. at 70–72; Def. SMF ¶ 110).

Supervisors and industrial instructors at MCI-Norfolk rate the monthly performance of inmates in vocational and other programs as "satisfactory," "unsatisfactory," or "incomplete." (Def. SMF ¶ 40). Inmates may be awarded Earned Good Time credit on a monthly basis for "satisfactory performance" in an employment, educational, or training program. (Def. SMF ¶ 38–39). Inmates are also paid for "good and satisfactory work." (Def. SMF ¶ 42).

Between the end of September and beginning of October 2012, Mattei learned that he had received an unsatisfactory rating on his performance evaluation for his Metal Shop I job in April 2012 and, therefore, did not earn good-time credit for that month. (Def. SMF ¶¶ 111–12). He contends that he was denied good-time credit for April 2012 in retaliation for the grievance he filed against Dunbar. (Pl. SMF ¶¶ 80–82). He received good-time credit for every other month in which he worked in the Metal Shop. (Def. Ex. 3, Dep. Ex. 6).

On October 10, 2012, Mattei filed a second grievance, contending that he was denied good-time credit in April 2012 in retaliation for filing the previous grievance. (Def. SMF ¶ 115).

On October 15, 2012, Mattei completed his temporary assignment to Metal Shop II and returned to Metal Shop I. (Def. SMF ¶¶ 110, 127). Two days later, on October 17, Dunbar saw him removing a back brace. (Def. SMF ¶ 128). Metal Shop I did not have a back brace. (Def. SMF ¶ 131). Dunbar asked Mattei where the brace came from. (Def. SMF ¶ 128). Mattei responded that he had received the brace from another inmate in Metal Shop II. (Def. SMF ¶¶

128, 133). Mattei contends that he had been wearing the back brace, over his clothes where it was easily visible, for several days before Dunbar confronted him about it. (Pl. SMF ¶ 128). Dunbar called the supervisor of Metal Shop II, who told him that a back brace was missing and that he had not given Mattei permission to take it. (Def. SMF ¶ 132). Mattei was aware of the institutional rules and regulations prohibiting inmates from getting property from another inmate without permission. (Mattei Dep. at 97). Noncompliance with any shop or institutional rule can be grounds for termination. (Def. SMF ¶ 17).

On October 17, after Dunbar confronted Mattei about the back brace, the DOC's grievance coordinator interviewed Dunbar regarding the second grievance. (Def. SMF ¶ 118).

Mattei was fired from his job in the Metal Shop two days later, on October 19. (Pl. SMF ¶ 136). He was told that he was fired because he had taken the back brace without permission. (Def. SMF ¶¶ 136–37).

Mattei contends that Dunbar fired him after the October 17 interview and in retaliation for filing grievances. (Pl. SMF ¶¶ 117, 136). In January 2013, the grievance coordinator denied Mattei's second grievance. (Def. SMF ¶ 125). His request for good-time credit was also denied because of his unsatisfactory rating for April 2012. (*Id.*). His appeal of that denial was denied in February 2013. (Def. SMF ¶ 126).

In November 2012, Mattei filed a third grievance, contending that he was fired in retaliation for filing grievances. (Def. SMF ¶ 138). Following another investigation, the grievance coordinator denied that grievance as well, stating that "the termination appeared appropriate" because he admitted using the back brace, which was a tool from another shop. (Def. SMF ¶ 141). He appealed, and that appeal was denied in January 2013. (DMF ¶ 142).

On April 18, 2013, Jeff White, another inmate who worked in the Metal Shop,

approached the Director of Security at MCI-Norfolk and reported that Dunbar had offered him Dunkin' Donuts to beat up Mattei. (Def. SMF ¶ 179). According to White, he told Dunbar that he would not beat up Mattei. (Def. SMF ¶ 181). An investigation ensued. Dunbar denied the encounter with White. (Def. SMF ¶ 184). In May 2013, the investigation concluded and White's claim was found unsubstantiated. (Def. SMF ¶ 186).

Mattei learned about White's allegations against Dunbar from another inmate, who in May 2013 gave him an affidavit drafted by White. (Def. SMF ¶¶ 195-96). White's affidavit was dated April 29, 2013. (Def. SMF ¶ 195). Mattei filed a fourth grievance against Dunbar on June 9, 2013, contending that Dunbar "tried to hire an inmate to assault him" in retaliation for filing grievances. (Def. SMF ¶ 196). On June 20, 2013, the grievance coordinator denied the grievance based on the prior investigation into White's allegations. (Def. SMF. ¶ 197).

### B. Procedural Background

On September 9, 2013, Mattei filed this action against Dunbar and four other named prison officers. The complaint alleged that all defendants had, in varying ways, either retaliated against Mattei for protected speech or assisted in or refused to prevent that retaliation. On June 13, 2014, defendants filed a motion to dismiss the complaint for a failure to state a claim upon which relief can be granted. On March 23, 2015, that motion was granted as to all claims but three. The remaining claims concern only defendant Dunbar, and allege that he retaliated against plaintiff for filing grievances by (1) denying him good time for the month of April 2012; (2) firing him from the metal shop; and (3) soliciting another inmate to cause him physical harm. Dunbar has now moved for summary judgment on those three remaining claims.

## II. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

### III.     Analysis

####    A.     First Amendment Retaliation

The First Amendment guarantees not only freedom from government censorship, but also freedom from official retaliation on the basis of protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 547, 588 n.10

(1998)) (alternation in original).  Thus, even conduct that "fall[s] short of a direct prohibition against the exercise of First Amendment rights" can be actionable if it has a "deterrent, or 'chilling,' effect."  *Board. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

While many rights and freedoms are necessarily curtailed during incarceration, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).  Thus, despite the general deference owed to the managerial decisions of prison officials, "retaliation against a prisoner's exercise of constitutional rights is actionable."  *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011).  However, "to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter."  *Hannon*, 645 F.3d at 48.  Furthermore, as to causation, "a prisoner must prove that the [adverse] action would not have been taken 'but for' the alleged improper reason." *L'Heureux v. Whitman*, 1997 WL 639324 at *1 (1st Cir. 1997) (unpublished opinion).

### 1.     **Denial of Good-Time Credit**

Count 3 alleges that Dunbar denied Mattei good time for the month of April 2012 in retaliation for filing an informal grievance.  Filing grievances is a protected activity.  *Hannon*, 645 F.3d at 48.  However, there is a factual dispute as to whether Mattei actually filed an informal grievance.  (Pl. SMF ¶ 89).  Dunbar contends that all properly submitted informal grievances are logged by the Director of Security's Office, and that no record of Mattei's April 2012 grievance exists.  (Def. SMF ¶¶ 99–100).  From that, he infers that Mattei did not file an informal grievance.  (Def. Mem. at 9).  Mattei contends that he did file an informal grievance,

pointing to a handwritten copy of the complaint dated April 19, 2012. (Pl. SMF ¶ 98; Def. Ex. 11 at 6). Viewing that evidence in the light most favorable to Mattei as the non-moving party, this Court will assume for the purposes of summary judgment that Mattei did at least attempt to file an informal grievance in April 2012. Thus, he engaged in a protected activity.

Next, Mattei must establish that Dunbar took an adverse action against him. The adverse action need not itself be an independent constitutional violation. *See L'Heureux*, 1997 WL 639324 at *1 (stating that "[c]onduct not otherwise constitutionally deficient may be actionable under § 1983 if it was done in retaliation for the exercise of a constitutionally protected right"). Rather, the act need only be "of a kind that would deter persons of 'ordinary firmness' from exercising their constitutional rights in the future." *Starr v. Dube*, 334 Fed.Appx. 341, 342 (1st Cir. 2009) (unpublished opinion). For a prisoner, the threat of being denied good-time credit would surely act as a significant deterrent. *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (stating that loss of good-time credit could deter person of ordinary firmness from engaging in protected activity). Thus, being denied good-time credit constitutes an adverse action.

Finally, Mattei must establish that there is a causal connection between his filing an informal grievance and being denied good time. There is a factual dispute as to whether Dunbar was even aware of Mattei's April 2012 grievance. Dunbar contends that he was not. (Def. SMF ¶ 103). Mattei contends that Dunbar spoke to him about the grievance and promised to "do something" for him so that he would be eligible for the next available raise. (Pl. SMF ¶ 103; Mattei Dep. at 69). He further contends that Dunbar then assigned him to work with another inmate to get training on a particular machine so that he could be considered for a raise. (Def. Ex. at 70). For the purposes of summary judgment, this Court will assume that Dunbar was

aware of the grievance.

Knowledge of the grievance, however, is insufficient to establish causation. Mattei must show that he was denied good-time credit *because of* the grievance. Dunbar contends that Mattei was denied good-time credit for a legitimate, non-retaliatory reason: an unsatisfactory performance evaluation in April 2012. (Def. SMF ¶ 87). While Mattei does not offer any direct evidence to contradict that contention, circumstantial evidence can be sufficient. *Hannon*, 645 F.3d at 49, 50–51.

There is some circumstantial evidence that contradicts, or at least casts doubt on, Dunbar's stated reason. It is true that Mattei received an unsatisfactory rating for the month of April. (Def. Ex. 3 at 52). However, there are inconsistencies between his monthly ratings (which are used to determine good time) and his quarterly performance evaluations. He received identical performance evaluations in January (second quarter) and April (third quarter) 2012. For each of those quarters, he was marked as "Needs Improvement" for the categories "Discuss Attitude," "Skill Development," and "Overall Rating." (Def. Ex. 3 at 45). However, he received satisfactory monthly ratings for every month except April. (Def. Ex. 3. at 52). Dunbar has not offered an explanation for that inconsistency. A reasonable juror could conclude that Mattei's unsatisfactory rating in April was pretextual or the result of retaliation. There is a genuine issue as to whether Mattei would have been denied good time but for the alleged retaliatory motive, and summary judgment is therefore inappropriate on that claim.

### 2. Termination

The complaint also alleges that Dunbar fired Mattei in retaliation for filing his second grievance. It is uncontested that Mattei engaged in the protected activity of filing a grievance. (Def. SMF ¶ 117). Furthermore, termination—even from a prison job—is an adverse act that

would deter a person of "ordinary firmness" from engaging in protected activity. *See Mack v. Yost*, 427 Fed.Appx. 70, 72–73 (3d Cir. 2011) (unpublished opinion) (holding that loss of prison employment constitutes adverse action).

However, Mattei has failed to produce evidence sufficient to show that he would not have been fired but for the alleged retaliatory motive. It is uncontested that on October 17, 2012, Dunbar saw Mattei remove a back brace that he had received from another inmate in Metal Shop II. (Def. SMF ¶¶ 128, 133; Pl. SMF ¶¶ 128, 133). It is also uncontested that Mattei was aware of the rule that inmates were not supposed to receive property from other inmates without permission, and that he did not ask any staff member if he could take the back brace. (Def. SMF ¶¶ 133, 135). Noncompliance with any institutional rule can be grounds for termination. (Def. SMF ¶ 17).

Mattei contends that he had been wearing the back brace every day since his return to Metal Shop I on October 15. (Pl. SMF ¶ 128). He further contends that he was not actually fired until after Dunbar learned of his second grievance. (Pl. SMF ¶ 136). Even if that is true, however, he still cannot establish that he would not have been terminated but for an impermissible retaliatory motive. Whether Dunbar saw the back brace on October 15 or 16 is irrelevant. It is uncontested that Mattei was in fact wearing the back brace and that doing so was a violation of institutional rules for which he could legitimately be fired. He has not shown that, absent any retaliation, he would not have been fired on the basis of the back brace alone. Because there was a legitimate reason for his termination, he cannot establish that it amounted to a constitutional violation. *See Harman*, 547 U.S. at 260 ("[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."). Therefore, summary judgment will be granted as to Count 8.


### 3. <u>Attempt to Cause Physical Harm</u>

The third and final remaining count, Count 12, alleges that Dunbar attempted to induce another inmate to physically harm Mattei in retaliation for filing grievances. Here again, it is uncontested that Mattei engaged in a protected activity by filing a grievance in October 2012. (Def. SMF ¶ 117).[1]

Attempting to induce an inmate to physically harm another inmate is clearly an adverse act. Dunbar seeks to avoid this conclusion by contending that "the best that Mattei could hope to prove is that Dunbar *attempted* to violate his First Amendment rights" and that, to be actionable under § 1983, "[t]here must have actually been a deprivation of a federally protected right." (Def. Mem. at 16). But in the context of a retaliation claim, attempting to have someone physically harmed itself violates that person's First Amendment rights. *See Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) ("In a First Amendment retaliation claim, 'retaliation for the exercise of constitutional rights is itself a violation of the Constitution.'") (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).[2] The relevant inquiry is not whether the defendant was successful in completing the retaliatory act as intended, or whether the act was successful in preventing the plaintiff from engaging in further speech; rather, it is whether the act as actually completed "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474,

---

[1] Dunbar contends that Mattei's October 2012 grievance could not have formed the basis for retaliation because White's testimony—if believed—suggests that Dunbar attempted to solicit him to harm Mattei before October 2012. For the reasons discussed below, White's testimony could reasonably be interpreted to suggest that Dunbar attempted to solicit him shortly after Mattei filed his second grievance in early October 2012.

[2] Dunbar cites to inapposite case law for the proposition that "a mere attempt to deprive a person of his First Amendment rights is not actionable under § 1983." (Def. Mem. at 17). The primary case cited, *Berard v. Town of Millville*, 113 F. Supp. 2d 197 (D. Mass. 2000), was not a retaliation case. *See id.* at 203. Similarly, *Aldrich v. City of Cambridge*, 2013 WL 5533196 (D. Mass. 2013), concerned an attempt to interfere with *future* speech, not retaliation for prior protected speech. *Id.* at *3. Finally, *Rodriguez v. Leeman*, 2001 WL 1328597 (D. Me. 2001), which is a retaliation case, incorrectly cites to *Berard* for support. *See id.* at *3.


500 (4th Cir. 2005) (internal quotation marks omitted); *see also Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.").

"[T]hreats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct." *Hill*, 630 F.3d at 474. Even an unsuccessful attempt to have someone physically harmed in retaliation for protected speech would likely have a substantial chilling effect. *See Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (holding that reasonable jury could find that correctional officer's threats of physical harm would deter prisoner of ordinary firmness from filing grievances); *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007) (holding that threat of physical harm "would surely suffice . . . to chill a person of ordinary firmness").

Of course, to be chilled, one must be aware of the threat. This case is unusual in that Dunbar attempted to solicit another individual to cause Mattei physical harm, but did not himself directly threaten him. Mattei, in fact, did not know about the attempt until sometime later when another inmate gave him an affidavit written by White regarding the incident. (Def. Ex. 3 at 110–11). However, the test—whether the adverse act would chill or deter persons of "ordinary firmness"—is an objective one. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). Thus, whether and when Mattei had knowledge of the threat and whether it *actually* deterred *him* from engaging in protected activity is immaterial. Furthermore, word of the incident did reach other inmates. (Def. Ex. 3 at 110–11).

Mattei offers no direct evidence showing that Dunbar attempted to cause him harm because of his grievances. Again, however, circumstantial evidence can be sufficient. *See Hartman*, 547 U.S. at 260 (noting that retaliation cases "have simply taken the evidence of the

motive and the discharge as sufficient for a circumstantial demonstration that the one caused the other" and citing cases). Furthermore, temporal proximity between the protected activity and the allegedly retaliatory act can itself be sufficient circumstantial evidence of causation. *See Watson v. Rozum*, 2016 WL 4435624 *4 (3d Cir. 2016) (stating that plaintiff can establish causation with evidence of "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action"); *Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011) (holding that plaintiff's "showing of temporal proximity suffices to make out a prima facie claim of retaliation under the First Amendment").

There is evidence suggesting that the alleged retaliatory act occurred in temporal proximity to the filing of the second grievance. In an affidavit, White stated that his conversation with Dunbar, in which Dunbar allegedly asked him to "take care of plaintiff," took place in September or October 2012. (White Aff. ¶¶ 4–15). In a later deposition, White testified that that conversation occurred six to eight weeks before he was fired from the metal shop, which happened in October 2012. That places the incident in August or September of 2012. (White Dep. at 41; Def. Ex. 14 at 41). He further testified that the incident occurred shortly after Mattei moved from Metal Shop 2 back to Metal Shop 1, which would place it in mid-October 2012. (White Dep. at 37; Def. SMF ¶ 127).

While White is unable to provide specific dates, when viewing the record in the light most favorable to Mattei, a reasonable juror could conclude that White's conversation with Dunbar occurred in October 2012. Furthermore, because Mattei filed his second grievance on October 10, a reasonable juror could conclude that the temporal proximity between the two establishes a *prima facie* showing of causation. *See Watson*, 2016 WL 4435624 at *4 (holding that causation can be inferred from "unusually suggestive" timing); *Nagle*, 663 F.3d at 111

(holding that plaintiff satisfied causation element of *prima facie* claim of First Amendment retaliation based on showing that adverse action occurred six weeks after protected conduct). Dunbar contends that because of the time inconsistencies in White's story, no reasonable jury could find that the incident actually occurred. But that is a question of credibility that cannot be resolved on summary judgment.

In short, there is a genuine issue as to a material fact, and summary judgment is inappropriate as to Count 12.

### B. Qualified Immunity

Qualified immunity protects government officials from liability for money damages only if the conduct at issue "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry is a two-part test: a court must decide, first, whether the facts alleged show that the officer violated a right and, second, whether the right was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *accord Maldonado v. Fontanes*, 568 F.3d 263, 268–69 (1st Cir. 2009).[3]

At the summary judgment stage, the first step should be decided based on the record as viewed in the light most favorable to the non-moving party. *Morelli v. Webster*, 552 F.3d 12, 18–19 (1st Cir. 2009) (holding that courts should first "identify[] the version of events that best comports with the summary judgment standard and then ask[] whether, given that set of facts, a reasonable officer should have known that his actions were unlawful"). It has already been determined that the facts so viewed could support a finding that Dunbar violated Mattei's constitutional rights by denying good-time credit and soliciting another inmate to cause him

---

[3] In *Pearson*, the Court held that the two-step inquiry, while "often beneficial," is not mandatory. 555 U.S. at 236. Depending on the circumstances of the case, the first step may not be necessary. *Id.* at 239.

14

physical harm in retaliation for engaging in protected activity.

The only remaining inquiry is thus whether those rights were clearly established at the time. "A right is 'clearly established' if the contours of the right are sufficiently clear such that 'a reasonable official would understand that what he is doing violates that right.'" *Costa-Urena v. Segarra*, 590 F.3d 18, 29 (1st Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The right must be defined with specificity, not at a high level of generality based on abstract principles. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). In other words, it must be clearly established that the particular conduct at issue violates the right. *See id.* There need not be a prior case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741. Absent controlling authority, there must be "a robust 'consensus of cases of persuasive authority.'" *Id.* at 741 (quoting *Wilson v. Layne,* 526 U.S. 603, 617 (1999)).

It is well-established that retaliating against an inmate for filing grievances violates that inmate's First Amendment rights. *See Mack v. Warden Loretto FCI*, 2016 WL 5899173 at *8 (3d Cir. 2016) (holding that "[a] reasonable official in the prison officers' position should . . . have known that retaliating against [inmate] for exercising his right to petition . . . was unlawful" and therefore officials not entitled to qualified immunity). Furthermore, that right was clearly established in the First Circuit well prior to Dunbar's alleged retaliatory conduct. *See McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (holding that prisoner who alleged he was transferred in retaliation for filing legal actions against prison officials made out a claim under § 1983 for the violation of First Amendment rights).

Furthermore, while there is not First Circuit law on point, other circuits have recognized that the denial of good-time credits can form the basis of a retaliation claim under § 1983 when

15

done in retaliation for the exercise of constitutional rights. *See Brown*, 312 F.3d at 789; *Hanna v. Maxwell*, 415 Fed.Appx. 533, 535–36 (5th Cir. 2011); s*ee also Starr*, 334 Fed.Appx at 343 (recognizing that case law supports conclusion that loss of good-time credits can form basis of First Amendment retaliation claim).

Finally, prior to the alleged retaliatory act, it was also well-established that mere threats of retaliation can violate First Amendment rights. In 1972, the Supreme Court recognized that a "threat of specific future harm" is an adequate basis for a claim of First Amendment retaliation. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). Furthermore, while the First Circuit has not addressed the specific issue, numerous circuits have held that threats of physical harm can constitute First Amendment retaliation. *See Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013); *Hill*, 630 F.3d at 474; *Brodheim v. Cry*, 584 F.3d 1261, 1270 (9th Cir. 2009); *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007); *Pittman v. Tucker*, 213 Fed.Appx. 867, 871 (11th Cir. 2007) (unpublished opinion); *Jeffes v. Barnes*, 208 F.3d 49, 62 (2d Cir. 2000). Thus, a reasonable official would have understood that soliciting another inmate to physically harm Mattei in retaliation for filing grievances violated his First Amendment rights even though no actual physical harm resulted.

### C.     Availability of Remedies Sought

The complaint seeks relief in the form of: (1) good-time credit for the month of April 2013; (2) compensatory damages in the form of lost wages; (3) "compensatory" damages for "violations of civil rights" in the amount of $10,000 and for "the attempt to commit assault" in the amount of $25,000; and (4) reinstatement.[4] Because Mattei has failed to prove that he was

---

[4] The complaint also includes a catch-all request for "any other relief as this Honorable Court deems just and equitable." That phrase may be liberally construed to included a request for nominal damages. *See Aref v.*

terminated from his prison job in retaliation for engaging in protected speech, whether he is legally entitled to either lost wages or reinstatement is moot.  As to his remaining claims, Dunbar contends that he is not legally entitled to either good-time credit or compensatory damages.  For the reasons stated below, Mattei may still be entitled to at least nominal damages and therefore may proceed on his remaining claims.

### 1.    Good-Time Credit

Mattei cannot receive an award of good-time credit in a § 1983 action.  In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that because a request for the restoration of good-time credits challenges "the very fact or duration" of imprisonment, it can only be sought in a writ of habeas corpus.  *Id.* at 482, 500.  Because Mattei in effect contends that he should be released five days sooner than he otherwise would be, his sole federal remedy is a writ of habeas corpus.  *Id.* at 500.

### 2.    Damages

The issue of damages is more complicated.  The Prison Litigation Reform Act of 1996 provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Dunbar contends that § 1997e(e) bars Mattei's claim for compensatory damages.

The First Circuit has not yet directly addressed the question whether § 1997e(e) precludes compensatory damages in § 1983 actions raising constitutional claims.  *See Kuperman v. Wrenn*,

---

*Lynch*, 833 F.3d 242, 266–67 (D.C. Cir. 2016) (holding that complaint that included catch-all prayer for relief but did not specifically request nominal damages nonetheless made out a claim for nominal damages); *see also* Fed. R. Civ. P. 54 ("Every other final judgment [besides default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

645 F.3d 69, 73 n.5 (1st Cir. 2011) (noting that § 1997e(e) *could* preclude compensatory damages in § 1983 action but declining to reach the issue).  However, most circuits have held that § 1997e(e) does apply to § 1983 actions alleging constitutional violations, so that Mattei cannot recover damages for mental or emotional injuries resulting from constitutional violations absent a showing of physical injury.  *See Thompson v. Carter*, 284 F.3d 411, 417–18 (2d Cir. 2002); *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000); *Herman v. Holiday*, 238 F.3d 600, 665–66 (5th Cir. 2001); *Cassidy v. Indiana Dep't of Corr.*, 199 F.3d 374, 376 (7th Cir. 2000); *Davis v. D.C.*, 158 F.3d 1342, 1345–47 (D.C. Cir. 1998); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004); *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001).  Because the statutory language—"[n]o Federal civil action"—does not allow for exceptions, this Court concludes that § 1997e(e) precludes compensatory damages for mental and emotional injuries absent a showing of physical injury, regardless of whether the claims at issue are of a constitutional nature or not.  Mattei, therefore, cannot recover compensatory damages for mental or emotional injuries suffered as a result of his alleged First Amendment violation.

That, however, does not end the inquiry.  Section 1997e(e) does not preclude either nominal damages or punitive damages.  *See, e.g., Thompson*, 284 F.3d at 418; *Allah*, 226 F.3d at 252 (agreeing with position taken by Department of Justice as intervenor that § 1997e(e) does not bar claims for nominal or punitive damages).  *But see Harris v. Garner*, 190 F.3d 1279, 1290 (11th Cir. 1999) (holding that § 1997e(e) precludes claims for punitive damages absent physical injury), *vacated in part and reinstated in part*, 216 F.3d 970 (11th Cir. 2000) (en banc).  Nominal damages are appropriate to vindicate certain constitutional rights absent any showing of actual injury.  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 ("[N]ominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate

means of 'vindicating' rights whose deprivation has not caused actual, provable injury."). In other words, nominal damages vindicate the deprivation of a constitutional right itself, not any specific injury suffered as a result. Thus, nominal damages are not claims for mental or emotional injury and are therefore not barred by § 1997e(e).

Punitive damages, too, are unrelated to claims for mental or emotional injury. "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Stachura*, 477 U.S. at 306 n.9. Claims for punitive damages are premised on the nature of the constitutional violations itself rather than on the nature of the injury inflicted. Such claims serve to punish and deter egregious constitutional violations; they are not claims based on mental or emotional injury and are therefore no precluded by § 1997e(e). *See Allah*, 226 F.3d at 252. Thus, to the extent Mattei's *pro se* complaint can be read to include requests for nominal and punitive damages, he may be legally entitled to relief.

## IV. Conclusion

For the foregoing reasons, Dunbar's motion for summary judgment is GRANTED as to Count 8 and DENIED as to Counts 3 and 12.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: November 8, 2016                     United States District Judge